UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT COTTER II,                          Case No. 14-13215

             Plaintiff,                  Marianne O. Battani
v.                                         United States District Judge

COMMISSIONER OF SOCIAL SECURITY,           Stephanie Dawkins Davis
                                           United States Magistrate Judge
             Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 25, 27)**

## I.  PROCEDURAL HISTORY

    A.  <u>Proceedings in this Court</u>

On August 20, 2014, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Marianne O.

Battani referred this matter to Magistrate Judge Michael Hluchaniuk for the

purpose of reviewing the Commissioner's decision denying plaintiff's claims for a

period of disability, disability insurance benefits and supplemental security

income.  (Dkt. 3).  Both parties filed briefs in this case (Dkt. 9, 10).  This Court

then referred the matter to a three-judge panel to consider a request for a sixty-day

stay and substitution of counsel.  That panel subsequently transferred the case

back to the original judge, lifted the stay (Dkt. 13), struck the parties' briefs, and ordered supplemental briefing (Dkt. 17).  This matter was reassigned to the undersigned pursuant to Administrative Order on January 5, 2016.  (Text-only Order of Reassignment).  This matter is now before the Court on the re-filed cross-motions for summary judgment.  (Dkt. 25, 27).  These motions are now ready for report and recommendation.

     B.    <u>Administrative Proceedings</u>

Plaintiff filed the instant claim for disability insurance benefits on January 26, 2012, alleging disability beginning May 22, 2006.  (Dkt. 7-2, Pg ID 40).  Plaintiff's claims were initially denied by the Commissioner on July 3, 2012.  *Id.*  Plaintiff requested a hearing and on March 26, 2013, plaintiff testified before Administrative Law Judge ("ALJ") Joy Turner, who considered the case de novo.  (Dkt. 7-2, Pg ID 57-87).  In a decision dated May 7, 2013, the ALJ found that plaintiff was not disabled.  (Dkt. 7-2, Pg ID 40-52).  Plaintiff requested a review of this decision, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council, on June 21, 2014, denied plaintiff's request for review.  (Dkt. 7-2, Pg ID 29-31); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion

for summary judgment be **DENIED**, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be **REVERSED AND REMANDED** for proceedings consistent with this Report and Recommendation.

## II.     FACTUAL BACKGROUND

### A.     ALJ Findings

Plaintiff was born in 1978 and was 34 years old on the date last insured, December 31, 2012.  (Dkt. 7-2, Pg ID 51).  Plaintiff had past relevant work as a general foreman.  (Dkt. 7-2, Pg ID 65-67).  The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff had not engaged in substantial gainful activity from May 22, 2006, the alleged onset date to the date he was last insured, December 31, 2012.  (Dkt. 7-2, Pg ID 42).  At step two, the ALJ found that plaintiff had the following severe impairments: degenerative joint disease of the right ankle; degenerative joint disease of the right knee; degenerative disc disease of the lumbar spine; obesity; mood disorder; depression; and adjustment disorder.  *Id*.  Plaintiff's neck pain, bilateral shoulder pain, osteoarthritis of the right wrist, bilateral carpel tunnel syndrome, and/or bilateral cubital tunnel syndrome, were deemed non-severe.  (Dkt. 7-2, Pg ID 42-43).  Plaintiff's complaints of incontinence had ceased by July 2011 and were deemed not medically determined.  (Dkt. 7-2, Pg ID 43).  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one

of the listings in the regulations.  (Dkt. 7-2, Pg ID 43-45).

The ALJ determined that plaintiff had the residual functional capacity

(RFC) to perform unskilled sedentary work...

> [h]e cannot reach overhead with his left upper extremity.
> He has no limitations in his dominant right upper
> extremity. [He] requires the option to sit or stand at will.
> [h]e can occasionally climb ramps and stairs...[but] never
> climb ladders, ropes, or scaffolds; he may occasionally
> balance, stoop, kneel, crouch, and crawl.  He can
> occasionally balance, kneel, stoop, crouch or crawl. [He]
> must avoid hazards such as unprotected heights and
> dangerous moving machinery.  He is limited to simple,
> routine tasks.  [He] can interact occasionally with co-
> workers and supervisors. He cannot interact with the
> public.

(Dkt.7-2, Pg ID 45).  At Step Four, the ALJ found that plaintiff could not perform

his past relevant work.  (Dkt. 7-2, Pg ID 51).  However, the ALJ determined that,

considering plaintiff's age, education, experience, and RFC, there were jobs that

exist in sufficient numbers that plaintiff can perform and therefore, plaintiff had

not been under a disability from the alleged onset date through the date last

insured.  (Dkt. 7-2, Pg ID 51-52).

B.    Plaintiff's Claims of Error

Plaintiff argues that the ALJ's decision of non-disability is not supported by

substantial evidence because the ALJ improperly discounted the opinion of

plaintiff's treating orthopaedic surgeon.  (Dkt. 25, Pg ID 534-543).  Plaintiff

4

specifically argues that the treating physician rule requires the ALJ to give the treating source's opinions on the nature and severity of the impairments controlling weight as long they are well-supported by medically accepted clinical or laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record.  (Dkt. 25, Pg ID 536).  Plaintiff posits that if the ALJ finds that the treating physician's opinion is not entitled to controlling weight, the decision must contain specific reasons for the weight assigned to the treating source's opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewer the weight the adjudicator gave the treating source's medical opinion and the reasons for that weight.  *Id.* (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

Plaintiff argues that the reasons for giving the opinions of plaintiff's treating orthopaedic surgeon, Dr. Mendelson, limited weight are not supported by substantial evidence.  (Dkt. 25, Pg ID 541).  Plaintiff contends that the ALJ erred by relying solely on Dr. Mendelson's comments denoting progress and improvement shortly after his 2007 surgery, while ignoring notes reflecting ongoing consequences from his injury and reconstructive surgery.  *Id.*

Plaintiff also argues that the ALJ's findings are not supported by substantial evidence because she selectively chose unrepresentative and unreliable negative

5

EMG, MRI and X-Ray findings, and ignored or misstated positive findings to minimize plaintiff's impairments. (Dkt. 25, Pg ID 546). On this basis, plaintiff argues he is entitled to a remand for a new hearing.

C.      The Commissioner's Motion for Summary Judgment

The Commissioner contends that substantial evidence supports the ALJ's weighing of conflicting medical opinion evidence. (Dkt. 27, Pg ID 557-565). The Commissioner notes that the ALJ gave limited weight to Dr. Mendelson's opinions because they did not reflect the progress and improvement he achieved through conservative care. First, the Commissioner notes that Dr. Mendelson's opinions were largely consistent with the ALJ's RFC; specifically Dr. Mendelson limited plaintiff to sedentary work (Dkt. 7-7, Pg ID 301), and the ALJ concluded that plaintiff had the RFC for sedentary work (Dkt. 7-2, Pg ID 45). The doctor also concluded that plaintiff could engage in limited walking and could not lift more than 10 pounds (Dkt. 7-7, Pg ID 301), and sedentary work involves standing and walking for no more than two hours in an eight-hour day, and lifting no more than 10 pounds at a time. Moreover, while Dr. Mendelson's opinion precluded bending (Dkt. 7-7, Pg ID 301), the ALJ partially accounted for that limitation by restricting Plaintiff to occasional stooping (Dkt. 7-2, Pg ID 45). (Dkt. 27, Pg ID 558-559). Furthermore, according to the Commissioner, the objective medical records corroborated the ALJ's conclusion that plaintiff's condition improved after

6

Dr. Mendelson's 2007 opinion. (Dkt. 27, Pg ID 559-560). The Commissioner

emphasizes that plaintiff underwent conservative treatment for his back pain,

including pain medication, physical therapy, and a TENS unit (Dkt. 7-7, Pg ID

290, 296-297, 304, 305, 311, 332), and he indicated that his pain was better after

physical therapy (Dkt. 7-7, Pg ID 290, 296-297, 302), that plaintiff's strength and

sensation were intact from May 2007 to January 2008 (Dkt. 7-7, Pg ID 297, 302),

his September 2008 and June 2009 repeat lumbar studies were unchanged and

stable (Dkt. 7-7, Pg ID 290, 419), and his EMG of the lumbar spine was negative

for radiculopathy. (Dkt. 7-7 , Pg ID 320; Dkt. 27, Pg ID 560).

The Commissioner argues the ALJ-noted opinions of Dr. Friedman and Dr.

LaClair did not corroborate Dr. Mendelson's opinion. *Id*. Dr. Friedman

concluded that plaintiff was limited to work that did not require more than 30

minutes of standing or walking; repetitive bending, squatting, stooping, creeping,

crawling; or reaching with his left arm above shoulder level. (Dkt. 7-7, Pg ID

352). Dr. LaClair also opined that plaintiff was restricted to work that allowed

for a sit/stand option and did not require lifting more than 15 pounds, crawling,

kneeling, squatting or the performance of repetitive bending, lifting, twisting,

stooping, or stair climbing. (Dkt. 7-7, Pg ID 390). Additionally, the

Commissioner contends that Dr. Friedman's observations that plaintiff was not

putting forth full effort, that he was exaggerating his symptoms and profound pain

7

reactions, and that he could sit and stand without difficulty (Dkt. 7-7, PgID 351-352) was inconsistent with Dr. Mendelson's opinion.

In sum, the Commissioner argues that the ALJ provided good reasons for giving the treating doctor's opinion limited weight, as the ALJ found that Plaintiff's back problems had not progressed since the opinion was given and his pain improved with conservative treatment (Dkt. 7-2, PgID 49), findings that are supported by substantial evidence.  (Dkt. 27, PgID 561-562).  Countering plaintiff's arguments that the ALJ did not consider the required regulatory factors, the Commissioner notes the ALJ also considered the doctor's length of treatment and specialization, as she noted Dr. Mendelson's status as an orthopaedic surgeon (Dkt. 7-2, Pg ID 47), and his treatment of plaintiff back to June 2007.  (Dkt. 7-2, Pg ID 46, Dkt. 7-7, Pg ID 300-301).  Further, with respect to the regulatory factors of supportability and consistency, the Commissioner argues that plaintiff failed to point to any treatment report from Dr. Mendelson or other evidence in the record that substantiates the doctor's opinion.  (Dkt. 27, Pg ID 563).  Therefore, as the ALJ took into consideration the doctor's treatment history, specialization, and the evidence of record that established that plaintiff's back impairment improved with treatment (Dkt. 7-2, Pg ID 46), she properly evaluated Dr. Mendelson's opinion.

Furthermore, the Commissioner argues that the ALJ properly disregarded

Dr. Mendelson's later opinions in which he opined that plaintiff was permanently disabled.  (Dkt. 7-7, Pg ID 283).  Such an opinion is not entitled to controlling weight, and in fact, is not entitled to any special significance, as the opinion is on an issue reserved to the Commissioner. *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1527(e)(3)) ("Subsection (e)(3) further elaborates that no 'special significance' will be given to opinions of disability, even if they come from a treating physician."); 20 C.F.R. § 404.1527(d)(3) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner.").  Further, the Commissioner argues that opinions on issues reserved to Commissioner are not medical opinions that require explicit consideration by the ALJ.  *See Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) ("Precedent in this circuit and agency rulings support the ALJ's conclusion that Dr. McCord's opinion of Allen's credibility addresses one of the issues reserved to the Commissioner and therefore is not a medical opinion requiring consideration.").

The Commissioner also argues that the ALJ's findings are otherwise supported by substantial evidence.  The Commissioner argues that plaintiff failed to establish that the ALJ could not rely on the results of the May 2009 EMG.  The findings from the EMG were as follows: "SUMMARY: NORMAL STUDY," "Normal EMG and nerve conduction values of lower extremities" (Dkt. 7-7, Pg ID

320).  While the test results indicated that the EMG was a limited study (Dkt. 7-7, Pg ID 320, according to the Commissioner, that does not negate the normal results.  (Dkt. 27, Pg ID 567).

Moreover, plaintiff contrasts the 2009 EMG results with the results from his August 2011 EMG, arguing that those results do not provide "support for the ALJ's overall rationale, including rejection of Dr. Mendelson's opinions."  (Dkt. 25, Pg ID 545).  The Commissioner counters by arguing that the 2011 EMG study revealed mild bilateral carpal tunnel syndrome and mild bilateral ulnar neuropathy, presenting as cubital tunnel syndrome (Dkt. 7-7, Pg ID 418), conditions the ALJ found to be non-severe impairments (Dkt. 7-2, Pg ID 42-43).  The Commissioner notes there has been no challenge to that determination and that other evidence in the record supports the ALJ's finding that this impairment was non-severe (Dkt. 7-7, Pg ID 281, 351, 403, 408), including Plaintiff's May 2011 consultative examination findings where Dr. Friedman observed that his right wrist range of motion was full, his Hoffman's sign was negative bilaterally, there was no focal or diffuse weakness in the major muscle groups of his upper extremities, and he provided poor effort on grip testing.  (Dkt. 7-7, Pg ID 351).  According to the Commissioner, the plaintiff does not explain how his August 2011 EMG results contradict the ALJ's decision or corroborates Dr. Mendelson's opinion.  (*See* Dkt. 25, Pg ID 545).

10

The Commissioner also refutes plaintiff's argument that his 2009 MRI does not support the ALJ's finding that his back condition was stable. The Commissioner emphasizes that the ALJ noted that Plaintiff's lumbar spine MRI and x-rays had been repeated and that his condition was unchanged and stable. (Dkt. 7-2, Pg ID 46). According to the Commissioner, a review of both of the referenced test results demonstrates that the ALJ's finding is supported by substantial evidence. (Dkt. 27, Pg ID 568). The Commissioner notes that, on September 11, 2008, Dr. Munk concluded that Plaintiff's repeat x-rays showed no obvious fractures or dislocations, and there had been no changes or worsening of his degenerative disc disease. (Dkt. 7-7, Pg ID 290). The doctor added that Plaintiff could continue with conservative treatment, and he seemed to be doing relatively well. *Id.* Plaintiff then underwent a lumbar spine MRI in June 2009, and Dr. Porter-Grenn indicated that there was a component of degenerative disc disease between L4 and S1. (Dkt. 7-7, Pg ID 419). This result, however, is seemingly unchanged from Plaintiff's initial lumbar spine MRI, as Dr. Munk concluded in January 2007, that the study indicated degenerative changes at L4-5 and L5-S1 with no significant disc herniation. (Dkt. 7-7, Pg ID 307). Therefore, given that an ALJ is permitted to weigh the evidence in the record, her conclusion on this issue is permissible. *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971). The ALJ provided sufficient evidence for this Court to review the evidence relied

11

on in reaching the decision.  The Commissioner also notes that an allegation, like plaintiff's, of "'cherry picking' the record . . . is seldom successful because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014). (Dkt. 27, Pg ID 569-570).

## III.   DISCUSSION

### A.   <u>Standard of Review</u>

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion

13

about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of

14

appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

15

different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her

past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

17

decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

    C.    <u>Analysis</u>

        1.    *Treating Physician Opinion*

"Medical opinions are statements from physicians and psychologists or other 'acceptable medical sources' that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions."  SSR 06-3p, 2006 WL 2329939, at *2 (2006).  An opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source").  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (internal citations omitted).

An ALJ is required to give controlling weight to the opinions of a treating source if the opinion "is well-supported by medically acceptable clinical and

<center>18</center>

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the ALJ chooses not to give a treating source controlling weight, the ALJ must still "apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion." *Dickey-Williams v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 792, 802 (E.D. Mich. 2013) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

When refusing to give controlling weight to a treating source, an ALJ must give good reasons for discounting the weight given to a treating-source opinion. *Dickey-Williams*, 975 F.Supp.2d at 803 (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013)). These reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. *Gayheart*, 710 F.3d at 376. This procedural requirement ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *Id*. In *Gayheart*, the court ruled that the ALJ failed to set forth good reasons for how and

19

why the treating doctor's opinions failed the controlling weight test because, *inter alia*, he did not identify the substantial evidence that was purportedly inconsistent with the treating source's opinions. *Id.* at 376-377.

Here, the ALJ does not set forth good reasons for how and why Dr. Mendelson's June 2007 opinion regarding plaintiff's ability to perform limited sedentary work is not entitled to controlling weight. The ALJ's only justification for discounting Dr. Mendelson's opinion is that plaintiff's condition progressed and improved with conservative treatment after 2007.[1]  Nevertheless, the ALJ does not identify any evidence from the record to support that conclusion, or any substantial evidence inconsistent with Dr. Mendelson's opinion. Indeed, as discussed more fully *infra*, Dr. Mendelson's opinions regarding plaintiff's postural limitations are consistent with those of Dr. Friedman and Dr. LaClair, consulting examiners whose opinions were given great weight by the ALJ. Additionally, nothing in Dr. Mendelson's later reports conflict with his 2007 opinion, with the exception of his conclusion that plaintiff is permanently disabled (Dkt. 7-7, Pg ID 283), which was appropriately disregarded by the ALJ as a matter reserved exclusively to the Commissioner. *See Bass*, 499 F.3d at 511. The undersigned

---

[1] Notably, the ALJ's assertion that plaintiff's progress and improvement with conservative treatment relates only to his back conditions. (Dkt. 7-2, Pg ID 49). The ALJ does not offer any contradicting evidence pertaining to plaintiff's leg injury, which is the focus of Dr. Mendelson's opinion.

believes that the discounting of Dr. Mendelson's opinion by the ALJ has not been adequately justified under the controlling weight test and thus mandates a remand for a proper evaluation of the treating physician's opinion under *Gayheart*, 710 F.3d at 376-77.

### 2.     *Other Medical Opinions*

An ALJ is required to evaluate every medical opinion of record, and set forth a valid basis for rejecting any.  20 C.F.R. § 404.1527; *see Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir.1987).  The Commissioner may not disregard opinions of a consulting physician which are favorable to a claimant.  *See Lashley v. Sec'y*, 708 F.2d 1048, 1054 (6th Cir.1983).  Moreover, "in weighing medical evidence, 'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Allen v. Comm'r of Soc. Sec.*, 2013 WL 5676254, at *15 (E.D. Mich. Sept. 13, 2013) (citing *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 194 (6th Cir. 2009)).  An ALJ may not substitute his [or her] own medical judgment for that of a treating or examining doctor where the opinion of that doctor is supported by the medical evidence.  *See Simpson*, 344 Fed. Appx. at 194; *see also Bledsoe v. Comm'r of Social Sec.*, 2011 WL 549861, at *7 (S.D. Ohio 2011) ("An ALJ is not permitted to substitute her own medical judgment for that of a treating physician and may not make her own independent medical findings.").  This is so even though the final responsibility for the RFC

21

determination is an issue reserved to the Commissioner. *Allen*, 2013 WL 5676254, at *15.

Further, an ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," discuss "why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence," "consider and address medical source opinions," and "[i]f the RFC assessment conflicts with an opinion from a medical source, ... explain why the opinion was not adopted." SSR 96-8p.

In the case at bar, the ALJ failed to offer any explanation, as required by SSR 96-8p, as to why she discounted the medical source statement of Dr. LaClair regarding plaintiff's postural limitations. Despite giving Dr. LaClair's opinion great weight and finding it consistent with plaintiff's history and the opinion of Dr. Friedman, the ALJ did not explain or discuss why she did not adopt Dr. LaClair's postural limitations, namely, no crawling, kneeling or squatting.[2]

_____

[2] To the extent the ALJ intended to adopt Dr. Friedman's postural limitations in the RFC, she did so without any explanation or discussion as to why she accepted those limitations over those of Dr. LaClair, whose opinion was consistent with plaintiff's treater and to which she gave great weight. Such explanation is mandated by SSR 96-8p. Moreover, the RFC postural limitations are not consistent with those given by Dr. Friedman. Dr. Friedman opined that claimant could not bend, squat, stoop, creep, or crawl repetitively (Dkt. 7-2, Pg ID 49; Dkt. 7-7, Pg ID 352), whereas the RFC provides that plaintiff "can *occasionally* balance, kneel, stoop, crouch, and crawl." (Dkt. 7-2, Pg ID 45) (emphasis added). Although in other contexts the difference between any "occasionally" and "not repetitively" might be de minimis, in social security disability cases the word "occasionally" is a term of art: it means up to one-third of

Without this analysis, the court is unable to determine how the ALJ fashioned the less restrictive postural limitations within the RFC.  *See Berryhill v. Shalala*, 4 F.3d 993, 1993 WL 361792 (6th Cir. Sept.16, 1993) ("[A] simple but fundamental rule of administrative law ... is ... that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.  If those grounds are inadequate or improper, the court is powerless to affirm the administrative action.") (internal citations omitted).  Moreover, Dr. LaClair's postural limitations are consistent with those of Dr. Mendelson, who opined that plaintiff could not bend, twist or lift over 10lbs.  (Dkt. 7-2, Pg ID 49; Dkt. 7-7, Pg ID 300-301).

The undersigned believes that the ALJ has failed to engage in the meaningful review that is necessary to show why she discounted Dr. LaClair's postural limitations.  SSR 96-8p.  Further, the undersigned has reviewed the citations to the record that the ALJ used to support her RFC and finds no medical evidence to support the postural limitations imposed therein, thereby suggesting

---

someone's working time.  *Hensley v. Astrue*, 573 F.3d 263, 265 (6th Cir. 2009) (*citing* S.S.R. 83-10 (1983) ("'Occasionally' means occurring from very little up to one-third of the time".).  Accordingly, under the RFC, plaintiff could be required to kneel, bend or crawl for two hours in an eight-hour workday, and there is nothing in the RFC (or in the hypothetical posed to the VE) prohibiting plaintiff from having to kneel, bend or crawl continually or repeatedly for those two hours, in direct contravention of the limitations imposed on plaintiff by the treating and both examining physicians alike.

the ALJ engaged in the prohibited practice of substituting her own medical judgment for that of a treating or examining doctor. *See Simpson*, 344 Fed. Appx. at 194.

For these reasons, in addition to the controlling weight issue outlined above, the undersigned finds that remand to re-evaluate the RFC, especially the postural limitations and their relation to those supplied by the consulting examiners, is required.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, and that the findings of the Commissioner be **REVERSED AND REMANDED** for proceedings consistent with this Report and Recommendation.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 16, 2016                    s/Stephanie Dawkins Davis
                                         Stephanie Dawkins Davis
                                         United States Magistrate Judge

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on <u>August 16, 2016</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<div style="margin-left:40%">

s/Tammy Hallwood_____
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov

</div>